IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARRELL E. WEBSTER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-07-181-L |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|     Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Darrell Webster seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should affirm.

I.     BACKGROUND

Mr. Webster applied for insurance benefits based on an alleged disability. Administrative Record at pp. 53-55 (certified Mar. 14, 2007) ("Rec."). The SSA denied the application initially and on reconsideration. *Id.* at pp. 38-42, 44-46. A hearing took place,[1] and an administrative law judge found that Mr. Webster was not disabled in light of his ability to work as a:

- deli cutter-slicer,

- pizza deliverer,

- small parts assembler,

---

[1]     *See* Rec. at pp. 185-217.

- food and beverage order clerk,

- table (fabrics) worker, and

- cafeteria worker.

*Id.* at pp. 20-26. The Appeals Council declined jurisdiction,[2] and the present action followed.

Mr. Webster alleges a conflict between the vocational expert's testimony and the descriptions of the jobs in the Dictionary of Occupational Titles ("DOT").

II.   STANDARD OF REVIEW

The Court's review entails only a determination of whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991). Evidence is substantial if it is greater than a scintilla. *See Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). However, a court may not reweigh the evidence or substitute its judgment for that of the SSA. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

III.  ALLEGED CONFLICT BETWEEN THE VOCATIONAL EXPERT'S TESTIMONY AND THE DOT JOB DESCRIPTIONS

The administrative law judge urges conflicts between the vocational expert's testimony and the DOT.

---

[2]   Rec. at pp. 4-6.

For five of the jobs relied upon, Mr. Webster points to the finding that he had a "limited education." Rec. at p. 24. Mr. Webster admits that this assessment was proper. Thus, the question for the administrative law judge was whether Mr. Webster's limited education would suffice for work as a deli-cutter slicer, small parts assembler, pizza deliveryman, table (fabrics) worker, or food and beverage order clerk. The administrative law judge answered in the affirmative, and he had the discretion to make this finding.

The Plaintiff also points to the finding that he could not repetitively lift items over his head. *Id.* at p. 23. According to Mr. Webster, this limitation prevented work in a cafeteria. But the administrative law judge had the discretion to reject this view and find an ability to work in a cafeteria notwithstanding the lifting restriction.

    A.    Reliance on Mr. Webster's "Limited Education": Jobs as a "Deli Cutter-Slicer," "Small Parts (Rotor) Assembler," "Pizza Deliverer," or "Food and Beverage Order Clerk"

Mr. Webster claims that with a limited education, he could not perform jobs with a language or mathematics level of "two" or higher.[3] According to Mr. Webster, this limitation would have prevented work as a:

- deli cutter-slicer,

- small parts (rotor) assembler,

---

[3]    Mr. Webster claims that there is "no doubt that [he] does *not* have the capacity to read at [level two]." Plaintiff's Opening Brief at p. 8 (June 5, 2007) ("Plaintiff's Opening Brief") (emphasis in original). But the Plaintiff does not dispute the administrative law judge's finding of a "limited education." This concession is fatal to Mr. Webster's denial of the ability to read at level two. *See infra* pp. 4-5.

- pizza deliverer, or

- food and beverage order clerk.

Thus, the Plaintiff alleges a failure to address conflicts between the DOT job descriptions and the vocational expert's testimony. Mr. Webster is incorrect.

As discussed above, the Plaintiff expressly agrees with his classification as someone with a "limited education." *See supra* p. 3. This concession forecloses his argument that he does not meet the DOT's "level two" in language or mathematics skills.

The social security regulations classify applicants based on educational level. *See* 20 C.F.R. § 404.1564(b)(1)-(5) (2006).[4] The lowest level is called "marginal" and the second-lowest is called "limited." *See* 20 C.F.R. § 404.1564(b)(1)-(2) (2006). By definition, one with a "marginal education" has the "ability in . . . arithmetic . . . and language skills which are needed to do simple, unskilled types of jobs."[5] The Plaintiff concedes that he not only met this requirement, but also qualified for the greater classification of "limited education." *See supra* pp. 3-4 & note 3. By definition, the concession meant that Mr. Webster had the arithmetic and language skills necessary for simple, unskilled jobs.[6] And the jobs of deli

---

[4] The Court should apply the Social Security regulations which were in effect at the time of the administrative law judge's decision. *See Branum v. Barnhart*, 385 F.3d 1268, 1272 n.2 (10th Cir. 2004).

[5] 20 C.F.R. § 404.1564(b)(2) (2006); *see also Newburn v. Barnhart*, 62 Fed. Appx. 300, 304 (10th Cir. Apr. 16, 2003) (unpublished op.) (when the claimant had a marginal education, vocational testimony regarding the ability to perform unskilled work did not conflict with the DOT).

[6] *See Cosper v. Apfel*, 229 F.3d 1162, 2000 WL 1140258, Westlaw op. at 1-2 (10th Cir. Aug. 11, 2000) (unpublished op.) (a plaintiff with limited education could perform unskilled work).

cutter-slicer, pizza delivery-person, small parts (rotor) assembler, and food and beverage order clerk were classified as "unskilled" according to the DOT.[7]

If Mr. Webster had a limited education - as he admits - he automatically met the DOT's requirements in arithmetic and language skills for four of the jobs relied on by the vocational expert and administrative law judge. The Plaintiff's argument to the contrary is self-defeating with his admission that he had a limited education.

Because the Plaintiff could perform unskilled work with a "limited" education, the vocational expert's testimony did not conflict with the DOT job descriptions. Thus, the Court should uphold the SSA's decision that Mr. Webster could work as a:

- deli cutter-slicer,
- pizza deliverer,
- small parts (rotor) assembler, and
- food and beverage order clerk.

B.   Reliance on the "O-Net": Jobs as a "Table (Fabrics) Worker" and "Small Parts (Eye-Dropper) Assembler"

The Plaintiff does not dispute that the jobs of "table (fabrics) worker" and "small parts (eye-dropper) assembler" required only "level one" reading and mathematics skills. Thus, Mr. Webster concedes that he could perform these jobs as described in the DOT. However,

---

[7]   The vocational expert testified that all of the relevant jobs were considered "unskilled," with an "SVP" of two. Rec. at pp. 212-13. This testimony was supported by the DOT. *See* Dictionary of Occupational Titles 316.684-014 (deli cutter-slicer), 230.663-010 (outside deliverer), 715.687-114 (rotor assembler), 209.567-014 (food and beverage order clerk) (4th ed. revised).

according to the Plaintiff, the "DOT as an accepted authority itself cross links" those jobs with others that are outside of his residual functional capacity.  Plaintiff's Opening Brief at p. 9.  Thus, Mr. Webster again urges a conflict in the vocational expert's testimony.  The Plaintiff is wrong.

Mr. Webster is referring to the Occupational Information Network ("O-Net").  The O-Net is a separate, online publication which allows a party to cross-reference jobs listed in the DOT.  *See* http://online.onetcenter.org/help/onet.

Mr. Webster has cited the O-Net's broad description of the entire occupational category, applied it to his residual functional capacity, and claimed a "conflict."  The argument is illogical and unsupported.

The vocational expert cited, and the administrative law judge relied on, only the DOT job titles.  Rec. at pp. 25, 212-13.  The expert and judge did not rely on any of the jobs referenced in the O-Net,[8] and no explanation was necessary.  Thus, no error took place and the Court should uphold the SSA's finding that the Plaintiff could perform the jobs of "table (fabrics) worker" and "small parts (eye-dropper) assembler."

C.  Reliance on Mr. Webster's Limited Capacity for Overhead Lifting: "Cafeteria Worker" Jobs

According to the administrative law judge, the Plaintiff could work in a cafeteria.  The Plaintiff challenges this finding, arguing that he could not repeatedly lift trays over his head.

---

[8]  The social security regulations require the administrative law judge to take notice of the DOT.  *See* 20 C.F.R. § 404.1566(d)(1) (2006).  No comparable provision exists for administrative notice of the O-Net.

*See supra* p. 3. The issue is whether the DOT required overhead lifting for cafeteria work, and the Court should answer in the negative.

The DOT classifies the "cafeteria attendant" job as "light work." *See* Dictionary of Occupational Titles 311.677-010. Under the social security regulations and the DOT, "light work" does require "lifting" capabilities. *See* 20 C.F.R. § 404.1567(b) (2006); U.S. Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C at C-2 (1993).[9] But the act of lifting need not be overhead. The DOT defines the term "lifting" to involve "[r]aising or lowering an object from one level to another . . . ." U.S. Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C at C-1 (1993). Under this definition, the raising or lowering may be over or under one's head. The administrative law judge accounted for the lifting restriction when he found that Mr. Webster could "lift/carry 20 pounds occasionally or 10 pounds frequently." Rec. at pp. 22-23. This capability did not conflict with the DOT.

The Tenth Circuit Court of Appeals addressed a similar issue in *Segovia v. Astrue*, 226 Fed. Appx. 801 (10th Cir. Mar. 23, 2007) (unpublished op.). There the administrative law judge found that the claimant was able to work as a cafeteria attendant even though she could only occasionally reach overhead. *See Segovia v. Astrue*, 226 Fed. Appx. at 802. According

---

[9] The SSA regulations and DOT provide that "light" work requires lifting up to twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b) (2006); U.S. Department of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C at C-2 (1993).

to the claimant, this finding conflicted with the DOT based on the need for "reaching" in this job. *See id*. at 803. The Tenth Circuit Court of Appeals rejected the argument. *Id*. at 804. In doing so, the court reasoned that the "cafeteria attendant" job involved frequent reaching, but the extension of arms and hands could have been in any direction and need not have been overhead. *Id*. "Thus, under the [definitions accompanying the DOT], even a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching." *Id*. (emphasis in original).

*Segovia v. Astrue* is persuasive. *See* Tenth Cir. R. 32.1(A). In that case and the present one, the administrative law judge found that the claimant could work as a cafeteria attendant notwithstanding a restriction on overhead work. In *Segovia* the issue involved overhead "reaching," and here the question involves overhead "lifting." But the *Segovia* court found no inconsistency because the DOT did not define "reaching" to involve overhead work. The same is true for the DOT definition of "lifting." Thus, the reasoning in *Segovia* would allow the claimant to work as a cafeteria attendant despite a limitation in the ability to repeatedly lift objects over his head. Under *Segovia v. Astrue*, the claim should be rejected.[10]

---

[10] Even if the administrative law judge had erred, the mistake would have been harmless. In this circuit, an administrative law judge's error may be considered harmless when the Court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Excluding cafeteria work, the administrative law judge found that there were 22,140 jobs in the region that Mr. Webster could perform with his limitations. Rec. at p. 25. This figure is overstated by 7,140 due to a misstatement by the judge about the number of regional jobs as a small parts assembler. *Compare* Rec. at p. 213 (testimony by the vocational expert that in Oklahoma and Texas there were "an estimate or in excess of 4,000" jobs as a small parts assembler, *with id.*

IV.     RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should affirm the SSA's decision.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1) (2000). The deadline for objections is September 20, 2007. *See* W.D. Okla. LCvR 72.1. The failure to file timely objections would result in waiver of the right to appeal the suggested affirmance. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

V.     STATUS OF THE REFERRAL

The referral is terminated.

Entered this 31st day of August, 2007.

_____
Robert E. Bacharach
United States Magistrate Judge

---

at p. 25 (statement by the administrative law judge that approximately 11,140 jobs existed in Oklahoma and Texas as a small parts assembler). But even without the judge's overstatement, there was undisputed testimony by the vocational expert that approximately 15,000 regional jobs were available for someone with Mr. Webster's residual functional capacity. Thus, the Court can confidently conclude that the administrative law judge would have rejected Mr. Webster's disability claim even without consideration of the job as a cafeteria attendant. *See Martin v. Apfel*, 201 F.3d 448, 1999 WL 1054676, Westlaw op. at 1 (10th Cir. Nov. 22, 1999) (unpublished op.) (holding that an alleged error was harmless in light of undisputed testimony that the plaintiff could work as a surveillance monitor and that 1000 such jobs existed in the state).